**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| FIRST QUALITY BABY PRODUCTS, LLC.  )  <br>             Plaintiff,                             )  Civil Action No. <br>                                                     )  1:09-cv-00354-WWC <br>      vs.                                        ) <br>                                                     ) <br> KIMBERLY-CLARK                      )  (Jury Trial Demanded) <br> WORLDWIDE, INC.                     ) <br>            Defendant.                        )  ELECTRONICALLY FILED | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1)**

**I.   INTRODUCTION**

First Quality has failed to meet its burden of showing that an actual controversy existed at the time First Quality filed its Complaint. First Quality does not, and cannot, dispute that (1) K-C had not even seen First Quality's new baby diaper product when the Complaint was filed, (2) K-C had absolutely no communication with First Quality regarding First Quality's new baby diaper product prior to this lawsuit, (3) K-C never threatened First Quality with legal action prior to this lawsuit, and (4) there is no evidence of any public statements made by K-C regarding any alleged threats to enforce K-C's patent against First Quality.

Unable to dispute the lack of any objective affirmative act on the part of K-C establishing a controversy, First Quality instead focuses on its alleged subjective belief that (1) a lawsuit was "inevitable" based on K-C having been involved in two previous litigations with unrelated parties, and (2) First Quality's erroneous understanding that K-C is contractually obligated to enforce its patents. However, under the applicable case law, such allegations, even if taken as true, simply do not support declaratory judgment jurisdiction.

In addition, First Quality's attempt to retroactively show that an actual controversy previously existed, by referring to the fact that K-C later filed suit in Texas (where the pleadings are nearly complete), is legally insufficient. Indeed, as one court recently explained in rejecting this same argument:

> The fact that [plaintiff] chose to throw down the gauntlet without a valid basis should not inure to its benefit because [the defendant patentee] has since countered with a lawsuit of its own. *To hold otherwise would impose a chilling effect on the right of a patent holder,* who is prematurely sued in a declaratory judgment action, to initiate what it believes is a legitimate infringement action for fear that its suit will be used against it in a forum selection battle.

*Breckenridge Pharm., Inc. v Everett Labs., Inc.*, No. 09-80015, 2009 WL 654214, at *6 (S.D. Fla. Mar. 11, 2009) (Ex. 2) (emphasis added).

To be sure, if First Quality's unsupported view of the law were accepted, the doors of the Federal Courts would swing wide open for countless declaratory judgment plaintiffs to prematurely file suit based on alleged subjective fear of suit,

before an actual controversy ever arises.  This Court should decline First Quality's invitation to expand the test for proper jurisdiction beyond its legitimate limits, and, accordingly, should dismiss this case.[1]

## II.   ARGUMENT

### A.   First Quality has Failed to Meet its Burden of Showing that an Actual Controversy Existed at the Time of Filing Its Complaint

#### 1.   First Quality Cannot Rely on K-C's Later Filed Suit in Texas to Retroactively Establish the Existence of a Controversy

As declaratory judgment plaintiff, First Quality bears the burden of showing that subject matter jurisdiction was proper at the time suit was filed.  *Panavise Prods., Inc. v. National Prods., Inc.*, 2008-1444, 2009 WL 73137, at *2 (Fed. Cir. Jan. 6, 2009) (unpublished) (Ex. 3).  Once K-C presented a challenge to the alleged factual basis for declaratory judgment jurisdiction, the allegations of the Complaint are no longer controlling, and the burden is placed squarely on First Quality to "demonstrate *facts* sufficient to support its contention regarding the court's jurisdiction."  *Id.* at *3 (emphasis in original).

First Quality has not met its burden as the undisputed facts show the absence of an actual controversy:  First Quality does not dispute that K-C had never seen

---

[1] K-C's Motion requests that this case be dismissed.  First Quality has since filed its "First Amended Complaint," and argues that the new pleading is the "operative pleading."  However, as explained in K-C's Brief in Support of its Motion to Dismiss Plaintiff's Case in Favor of Defendant's First-Filed Case in the Northern District of Texas (Dkt. No. 17), First Quality's "Amended Complaint" is not operative, and cannot cure the lack of jurisdiction at the inception of this case.

any First Quality baby products prior to this lawsuit, and admits that it is "factually true" that K-C had not communicated with or threatened First Quality about the '298 patent at the time this action was initiated. (*See* Dkt. No. 18, First Quality's Opposition ("Opposition") at 8).

Instead, First Quality erroneously and repeatedly relies upon subsequent facts—that K-C later filed suit in Texas—as a belated showing of an alleged controversy. The law is clear, however, that First Quality's argument misses the mark. The determination of whether subject matter jurisdiction exists must be determined based on the facts *as of the date the lawsuit was filed*. *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007).

Thus, K-C's subsequently-filed lawsuit in the Northern District of Texas, based on K-C's study of product samples given by First Quality *after* its Complaint was filed, cannot by itself show the existence of jurisdiction at the time First Quality filed its Complaint. *See Baker Hughes Oilfield Operations, Inc. v. Reedhycalog UK, Ltd.*, 05-931, 2008 WL 345849, at *3 (D. Utah Feb. 6, 2008) (Ex. 4) (finding that subsequent developments, including the filing of a second suit in Texas, are not appropriately considered in determining subject matter jurisdiction); *see also Hewlett-Packard Co. v. Acceleron, LLC*, No. 07-650, __ F. Supp. 2d __, 2009 WL 612478, at *5 (D. Del. Mar. 10, 2009) (Ex. 5) (observing that "[t]he Texas complaint post-dates the filing of the instant suit; therefore, it has

4

no bearing on the question of whether the facts existing at the time the complaint under consideration was filed' evidence jurisdiction." (citing *GAF Bldg. Materials Corp. v. Elk Corp.*, 909 F.3d 479, 483 (Fed. Cir. 1996)) (Ex. 5). "To hold otherwise would impose a chilling effect on the right of a patent holder, who is prematurely sued in a declaratory judgment action, to initiate what it believes is a legitimate infringement action for fear that its suit will be used against it in a forum selection battle." *Breckenridge Pharm., Inc. v Everett Labs., Inc.*, No. 09-80015, 2009 WL 654214, at *6 (S.D. Fla. Mar. 11, 2009) (Ex. 2) (rejecting declaratory judgment plaintiff's attempt to use the patentee/defendant's later filed suit to argue that a controversy existed at the time of suit was filed, and dismissing case for lack of subject matter jurisdiction).

Similarly, First Quality's suggestion that K-C's failure to provide First Quality a covenant not to sue under the '298 patent somehow creates jurisdiction also fails. (*See* Opposition at 9 ("Had [K-C] granted [First Quality] a covenant-not-to-sue under the '298 patent, there certainly would be no subject matter jurisdiction")). First Quality's argument that the issuance of such a covenant now is the only way to establish a lack of jurisdiction is untenable because K-C was unaware of the new First Quality product prior to suit being filed and thus had no opportunity to either agree or refuse to issue such a covenant. In such circumstances, courts have held that a failure to provide a covenant not to sue *after*

suit is filed does not support subject matter jurisdiction at the time suit was filed. *See Teva Pharm. USA, Inc. v. Abbott Labs.*, 301 F. Supp. 2d 819, 824 (N.D. Ill. 2004) ("Abbott's refusal to provide a covenant not to enforce its patent rights against Teva cannot have created a reasonable apprehension of suit *at the time the complaint was filed*, because Abbott had not yet refused to provide a covenant. Thus, Abbott's refusal is not relevant to the reasonable apprehension analysis." (emphasis in original)); *Cf. Prasco, LLC v. Medicis Pharm Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008) (rejecting plaintiff's argument that a patentee's pre-suit refusal to give assurances that it would not sue showed the existence of a controversy, noting that "[a] patentee has no obligation to . . . make a definitive determination, at the time and place of the competitors' choosing, that it will never bring an infringement suit").

Taken to its logical end, under First Quality's view of the law, a manufacturer that subjectively feels it might possibly be infringing a patent can simply file suit where and when it pleases, without proper subject matter jurisdiction, to extort from the patentee a covenant-not-to-sue. Accepting First Quality's argument would create a "chilling effect" on a patentee's ability to legitimately challenge a declaratory judgment plaintiff's illegitimately filed action, and turn declaratory judgment jurisprudence on its head. *Cf. Breckenridge*, 2009 WL 654214, at *6 (Ex. 2).

6

## 2. The Case Law Relied upon by First Quality Supports K-C's Position that Subject Matter Jurisdiction Was Absent When First Quality Filed Its Original Complaint

First Quality's reliance on its speculation regarding what K-C might eventually do is legally insufficient to show that a dispute existed when First Quality filed its lawsuit. First Quality's purported basis for the existence of subject matter jurisdiction was originally premised on the fact that K-C had twice filed suit in the Northern District of Texas against other parties with different products. (Dkt. No. 1, Complaint at ¶¶ 16-19). Recognizing this may not be sufficient to carry the day, First Quality now argues in its Opposition that, "[a]s understood by those in the industry," K-C is believed to have granted an exclusive license to another entity, Irving Personal Care, Ltd. ("Irving"), and is thereby allegedly obligated to enforce the patent "against any other party who manufactures baby diapers having elastomeric side panels with non-parallel edges." (Opposition at 3). However, First Quality's erroneous understanding of unseen alleged contractual terms, without any affirmative act or threatening letters from K-C, is insufficient to show an actual controversy existed.

Indeed, First Quality cites no authority supporting its novel theory that one may pursue a declaratory judgment based upon factual assumptions and speculation about the patent owner's anticipated reaction when made aware of the products. Rather, the cases cited by First Quality specifically rely on a showing of

7

an *affirmative act or threat* by the patent owner, when determining whether an actual controversy existed at the time suit was filed.

For example, in *Micron Tech., Inc. v. Mosaid Techs. Inc.*, the patent owner had sent numerous threatening letters to Micron prior to Micron's filing of is declaratory suit. 518 F.3d 897, 899 (Fed. Cir. 2008) ("On June 6, 2001, [the patent owner] sent a warning letter strongly suggesting that Micron should license its technology. [The patent owner] sent follow-up letters on December 19, 2001; March 18, 2002; and July 19, 2002"). The patent owner in *Micron* had also made strong public statements regarding its intent to enforce its patents against all manufacturers of the accused technology. As the court in *Micron* explained:

> [Patent owner] MOSAID issued public statements reiterating its intent to pursue its aggressive licensing strategy. MOSAID also made similar statements in its annual reports. In its 2005 annual report, for instance, MOSAID stated [that] "MOSAID believes that all companies which manufacture DRAM products use MOSAID's patented technology . . . . We will apply our strong IP portfolio and our significantly improved financial position in the *aggressive* pursuit of this objective."

*Id.* (emphasis in original).

In contrast, unlike the patentee in *Micron*, K-C did not threaten First Quality before it filed its declaratory judgment Complaint. Indeed, there was no communication whatsoever between K-C and First Quality regarding the patent or the products identified in the Complaint. Further, unlike *Micron*, K-C made no public statements that indicated an intent to file suit against all others in the

8

industry selling similar products. Consequently, the Federal Circuit's decision in *Micron* supports the unremarkable legal proposition that affirmative threatening acts by the patent owner can confer declaratory judgment jurisdiction; it cannot, however, be stretched to fit First Quality's novel theory that declaratory jurisdiction exists here.

Another case relied upon by First Quality, *Panavise Prods., Inc. v. National Prods., Inc.*, 2008-1444, 2009 WL 73137 (Fed. Cir. Jan. 6, 2009) (unpublished) (Ex. 3), highlights the factual distinction between this case and situations such as the *Micron* case. In *Panavise*, the Federal Circuit found that speculation by the declaratory judgment plaintiff is insufficient for establishing subject matter jurisdiction, even when there is evidence of prior enforcement by the patent owner. Pointing out that, as here, the patent owner *was not even aware* of the potentially-infringing products, the court in *Panavise* determined that "the fact that [the patent owner] routinely enforces its patent rights, when viewed under the totality of the circumstances in this case, is insufficient to create an actual controversy and establish subject matter jurisdiction." *Panavise*, 2009 WL 73137, at *2-4 (Ex. 3).

Faced with facts that track those of the present case, the court in *Panavise* determined that reference to prior suits, without a showing of some affirmative act directed at the declaratory judgment plaintiff, was merely an "assumption about a

threat of future injury." *Id.* (Ex. 3). The court therefore rejected the declaratory judgment plaintiff's contention that an actual controversy existed, explaining:

> [A]n actual controversy must be based on *real* and *immediate* injury or threat of future injury that is *caused by the defendants* – an objective standard that cannot be met by a purely subjective or speculative fear of future harm.

*Id.* at *3 (Ex. 3) (emphasis in original, citation omitted).[2]

Other recent cases further establish that in the absence of an overt act by the patent owner indicating that an actual dispute existed, subject-matter jurisdiction is lacking. For example, in *Edmunds Holding Co. v. Autobytel Inc.*, the court found no actual controversy, concluding that "suits against [several other] companies and stated general intent to enforce its rights, without more, are not sufficient to show the existence of a real controversy between [the parties]." 598 F. Supp. 2d 606, *2-3 (D. Del. 2009) (dismissing for lack of jurisdiction because, after surveying post-*MedImmune* cases, "none of the cases [plaintiff] cites supports the proposition that the absence of an overt, specific act is not a significant hurdle to a finding of jurisdiction under the Declaratory Judgment Act.").

---

[2] Although the court in *Panavise* noted, in *dicta*, that the lack of a direct, pre-suit communication does not, by itself, necessarily defeat subject matter jurisdiction, *Panavise*, 2009 WL 73137, at *4 (Ex. 3), K-C is unaware of any post-*MedImmune* case—and First Quality cites none—that has found jurisdictional controversy without some affirmative act directed at the accused infringer. *See Edmunds Holding Co. v. Autobytel Inc.*, 598 F. Supp. 2d 606, *2-3 (D. Del. 2009) (finding no post-*MedImmune* case to support proposition that jurisdiction can exist in absence of overt, specific act.).

### 3. The Allegations on Which First Quality Relies to Show the Existence of a Controversy are Factually Incorrect

Even putting aside the lack of legal authority supporting First Quality's argument, the factual allegations underlying First Quality's speculation and purported industry knowledge are incorrect. As explained in the Declaration of Vicki Margolis, filed herewith, the License Agreement between K-C and Irving does not require that K-C file suit against anyone. Instead, whether to enforce the licensed patents is relegated to K-C's "sole discretion." (*See* Ex. 1, Margolis Declaration at ¶ 6).[3] Further, the License Agreement merely includes an agreement to take "reasonable commercial action" against an infringer in the event K-C is put on notice of the infringement. (*Id*. at ¶ 9). It does not require K-C to file suit against a party manufacturing "baby diapers having elastomeric side panels with non-parallel edges," as First Quality speculates. Thus, First Quality's purported basis for believing that a lawsuit was "inevitable," as alleged by First Quality, was not only speculative, it was wrong.

In sum, First Quality simply "jumped the gun" when it filed its complaint, at a time when litigation was "still too speculative a prospect to support declaratory judgment jurisdiction." *Hewlett-Packard*, __ F. Supp. 2d __, 2009 WL 612478, at

---

[3] This exhibit (Ex. 1) contains confidential business information, and is filed pursuant to an Agreed Motion to File Under Seal. The electronic filing of this Memorandum, therefore, includes only a cover page for this exhibit.

\*8 (Ex. 5).  First Quality's speculative factual assertions based on its own assumptions—which are factually incorrect—are insufficient to show the existence of an actual controversy between the parties.  The fact remains that "declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, *without some affirmative act by the patentee*."  *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008) (emphasis added).  First Quality identifies no such act.  The undisputed facts reflect that First Quality did not have to file suit to combat any alleged restraint "to freely market its products," *see Panavise*, 2009 WL 73137, at \*3 (Ex. 3), or to avoid any alleged "scare-the-customer-and-run tactics" by K-C, *see Micron* 518 F.3d at 902.  First Quality has therefore failed to meet its burden of demonstrating the existence of a controversy at the time it originally filed suit.

### B. Even if an Actual Controversy Existed at the Time of the Complaint, First Quality Has Not Shown A Basis For This Court To Accept Declaratory Judgment Jurisdiction

Regardless of whether an actual controversy existed at the time suit was filed, this court should decline jurisdiction.  In its opposition papers, First Quality places inordinate emphasis on "convenience of venue" factors—facts that are only at issue if the court first finds that an actual controversy existed when suit was filed—in arguing for jurisdiction.  First Quality, however, largely ignores another

important factor that courts consider: whether the plaintiff's suit serves a legitimate purpose under the Declaratory Judgment Act.  *See EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814 (Fed. Cir. 1996) ("It is appropriate . . . for a district court to examine whether hearing the declaratory judgment action would serve the objectives for which the Declaratory Judgment Act was created").  Thus, although the Federal Circuit in *Micron* stated that "convenient" factors should be examined when a court determines whether to accept jurisdiction assuming an actual controversy exists, the inquiry does not end there.

As set forth in K-C's opening Memorandum, First Quality apparently filed its Complaint for some strategic gain.  Surprisingly, First Quality argues that the lack of pre-filing correspondence somehow shows that it had not filed the Complaint as a tactical measure.  (*See* Opposition at 10).  In making its argument, First Quality embraces facts showing a lack of actual controversy and it remains unclear how First Quality's rush to file suit can be considered evidence of good faith rather than conduct for tactical gain.  Indeed, First Quality offers no alternative explanation for the timing of its lawsuit.  Rather than filing suit during negotiations, *see EMC*, 89 F.3d at 815, First Quality instead hurried to the courthouse to dispense with any possible pre-filing negotiations.

First Quality may have been hoping for perceived better positioning for negotiating settlement, *see id.*, or perhaps was hoping to receive better treatment by

a court and jury in Pennsylvania than elsewhere. Regardless, First Quality's rush to file suit reflects its effort to preempt a possible future infringement suit and to forum shop for an apparent tactical gain. *See Serco Servs. Co. v. Kelley Co.*, 51 F.3d 1037, 1040 (Fed. Cir. 1995) (affirming district court's dismissal of declaratory judgment plaintiff's suit based, in part, on the fact that the plaintiff "intended to preempt [patentee]'s infringement suit"). Thus, the court should decline jurisdiction in its discretion, even if an actual controversy existed at the time of First Quality filed its Complaint.

## III.   CONCLUSION

Faced with K-C's challenge to jurisdiction, First Quality has failed to satisfy its burden of showing that alleged declaratory judgment jurisdiction was proper *at the time it filed the Complaint*. Kimberly-Clark Worldwide, Inc., therefore, respectfully asks this Court to grant the present Motion and dismiss this suit.

Dated:  April 16, 2009            By:    s/ Matthew J. Siembieda
                                         MATTHEW J. SIEMBIEDA
                                         (I.D. NO. 15299)
                                         MSIEMBIEDA@MORGANLEWIS.COM
                                         MORGAN LEWIS & BOCKIUS LLP
                                         PHILADELPHIA, PENNSYLVANIA 19103
                                         TELEPHONE:  (215) 963-4854
                                         FACSIMILE:  (215) 963-5001

OF COUNSEL:  MARC S. COOOPERMAN
BRADLEY F. RADEMAKER
TIMOTHY J. RECHTIEN
BANNER & WITCOFF, LTD.
10 S. WACKER DRIVE – SUITE 3000
CHICAGO, ILLINOIS 60606
TELEPHONE: (312) 463-5000
FACSIMILE: (312) 463-5001

ATTORNEYS FOR DEFENDANT,
KIMBERLY-CLARK
WORLDWIDE, INC.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of April, 2009, a copy of **DEFENDANT'S REPLY MEMORANDUM LAW IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(1)** was filed electronically and Notice of Filing was sent to all parties by operation of the Court's filing system.  Parties may access these filings through the Court's system.

                                              /s Matthew J. Siembieda
                                              Matthew J. Siembieda